UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

MICHELLE NESBITT,

Plaintiff,

-v-

CAROLYN W. COLVIN,
Acting Commissioner OF Social Security,

Defendant.

15-CV-6330

DECISION AND ORDER

Michelle Nesbitt("plaintiff") brings this action under Titles II and XVI of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("the Commissioner" or "defendant") improperly denied her application for supplemental security income ("SSI") under the Social Security Act (the "SSA").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's cross-motion is granted.

**PROCEDURAL HISTORY**

On January 17, 2012, plaintiff filed an application for SSI alleging disability as of April 15, 2008. Administrative Transcript ("T.") 162-187. Following an initial denial of that application, plaintiff and vocational expert ("VE") Abby May testified at a video hearing, held at plaintiff's request, on November 4, 2013 before administrative law judge ("ALJ") Mary Withum. T. 68-96. The

ALJ issued an unfavorable decision on January 14, 2014, and a request for review was denied by the Appeals Council on April 8, 2015. T. 1-6.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff had not engaged in substantial gainful activity since January 17, 2012, the onset date of her alleged disability; (2) her spinal arthralgias, depression, and anxiety were severe impairments; (3) her impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d) and 416.926); and (4) plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations: avoid ladders, ropes, scaffolds, and all exposure to unprotected heights; simple, routine, and repetitive tasks, simple work-related decisions, and few workplace changes; occasionally interaction with the public, coworkers, and supervisors; and frequent stooping. T. 17.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

At the hearing, plaintiff, who lives with her boyfriend and three children (16 years old and 13-year-old twins), testified that she was unemployed and receiving DSS payments. Since 2002, plaintiff worked as a housekeeper in an adult care facility for six months, a part-time bookkeeper for her husband's roofing business from 2005 to 2006, and a home health aide for an unspecified period. In August 2011, she also helped a friend do siding work

for three days, during which she witnessed another worker fatally fall from a scaffold. Plaintiff lifted up to 30 pounds during her periods of employment. She further testified that due to her anxiety she does not like to leave her house or be around other people, although she does drive or walk to other locations. She takes Ativan, which "calms [her] nerves," to some extent, if she has to leave the house. T. 76. Her symptoms include heart palpitations, difficulty breathing, and a lump in her throat, which last 30 minutes to an hour. Her medication was changed to include an increase in Cymbalta, which made her "feel a little better." T. 78. On a typical day, plaintiff would get up, get the kids up for school, do puzzles, listen to music, clean, watch TV and, on occasion, bake.

Plaintiff had struggled with panic attacks and depression from a young age, but her anxiety became worse at the end of 2007 when she found out that her husband was having an affair with her best friend and "[her] world just fell apart." T. 78-79. She shops at midnight to avoid people and sleeps for about four hours on a good night. She also has frequent crying spells that can last up to two hours four or five days a week. Her current medications do not cause any side effects.

Apart from her anxiety, plaintiff testified that she also experiences lower back pain and abdominal cramping on a daily basis. Her legs and hips "go numb" for ten to fifteen minutes if she sits or stands for a long period of time. T. 84. She is able

to sit for "about a half hour without having to adjust" her position, and she can lift up to 30 pounds. T. 85-86. Plaintiff visits her counselor once or twice a month and has never been admitted to inpatient psychiatric care.

The VE testified, in response to the ALJ's hypothetical question, thatan individual of plaintiff's age, education, and work background who was limited to light work activities involving no ladders, ropes, scaffolds, or unprotected heights, frequent stooping, simple repetitive tasks, occasional workplace changes and decision making, and occasional interaction with coworkers, supervisors, and the general public could perform the unskilled, light work of an office helper, of which over 85,000 positions exist nationally, a mail room clerk, of which over 102,000 positions exist nationally, and a laundry sorter, of which over 434,000 positions exist nationally. T. 89-90.

II. <u>The Commissioner's Decision Denying Benefits is Supported by Substantial Evidence in the Record.</u>

Plaintiff contends that remand is warranted because the ALJ erred by assigning little weight to the opinions of her mental health treatment providers, Kathe Klein and Lorraine Eyth, and her treating family physician Dr. Nickell, and assigning greater weight to the state agency psychiatric examiner Dr. Marjorie Baittle, Ph.D. and non-examining consultant Dr. T. Harding, Psy.D. Plaintiff's memorandum of law, p. 16-24. Defendant responds that the ALJ gave valid reasons for affording little weight to the "other source" opinions of Ms. Klein and Ms. Eyth, to which the

treating physician rule does not apply, and good reasons for affording less than controlling weight to Dr. Nickell's opinion. Defendant's memorandum of law, p. 15-25.

The Court notes, initially, that the regulations define nurses and therapists as "other sources" whose opinions may be considered with respect to the severity of the plaintiff's impairment and ability to work, but need not be assigned controlling weight. 20 C.F.R. § 416.913(d)(1). In her decision, the ALJ noted that Ms. Klein, plaintiff's treating counselor, was not an acceptable medical source and had a limited one-year treating relationship, during which plaintiff had compliance and attendance issues. The ALJ further noted that Ms. Klein's opinion that plaintiff would miss four or more workdays per month due to her mental impairments did not address plaintiff's noncompliance with treatment or plaintiff's own reports that her condition improved with therapy and Ativan. In April 2013, Ms. Klein noted that plaintiff's mood was emotional with full range and an appropriate affect. She displayed organized thoughts, was cognitively intact, and showed fair to good judgment and insight. T. 528. Ms. Klein recommended adjusting plaintiff's medications and continuing therapy. T. 528.

The record reveals that, in November 2012, Ms. Eyth, LCSW, found that, despite having a long history of anxiety, plaintiff was motivated for treatment and had: good communication skills; insight into her problems; the ability to participate in treatment and care for herself and others; and adequate decision making skills.

T. 483. Ms. Eyth also noted that plaintiff had limited vocational skills, financial difficulties, difficulties with interpersonal relationships, and a history of noncompliance with treatment. T. 483. Ms. Eyth later submitted a letter to the Appeals Counsel that plaintiff's treatment attendance problems were no longer an issue. T. 644.

In a mental RFC evaluation dated July 16, 2013, Ms. Klein and Ms. Eyth diagnosed panic disorder with agoraphobia and depressive disorder, not otherwise specified, and opined that she had a fair ability: to comprehend and carry out simple instructions; remember work procedures; remember detailed instruction; respond appropriately to supervision; exercise appropriate judgment; and make simple work-related decisions. T. 538-540. They further opined a fair-to-good ability to respond appropriately to coworkers and be aware of normal hazards and make necessary adjustments. T. 538, 540. However, plaintiff showed a poor ability to: complete a normal workday; concentrate and attend tasks over an eight-hour period, maintain social functioning, and respond to normal work-related stress. T. 539-540. Her ability to abide by occupational rules was poor-to-fair. T. 540.

With respect to the weight accorded to Dr. Nickell's opinion, the treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial

evidence in the record. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

Here, the ALJ found Dr. Nickell's opinion that plaintiff was not able to sustain full time work, despite the doctor's own opinion that she had no or slight limitations in all mental functioning areas, to be unpersuasive. The ALJ listed several reasons for rejecting the doctor's opinion, including the finding that Dr. Nickell, "a primary physician and not a psychological specialist," treated plaintiff primarily for "benign conditions such as poison ivy, cold and B12 shots." T. 26; *see* T. 491, 493, 496, 502, 503. The ALJ further noted that Dr. Nickell's treatment records revealed that plaintiff benefitted from Ativan and therapy. *See* T. 502. In an October 2, 2012, Medical Examination for Employability form for the Department of Social Services, Dr. Nickell opined that, with some limitation, plaintiff could understand and remember simple instructions and complex instructions, maintain attention and concentration, and interact with others and, with no limitation, maintain socially appropriate behavior and personal hygiene, make simple decisions, and perform

simple tasks. Dr. Nickell further opined that plaintiff would be able to return to work within six months if her condition was stabilized by reinitiating in counseling and the use of her medications. T. 490, 502 (plaintiff reporting not using Ativan daily despite her increased stress). On April 10, 2013, Dr. Nickell completed another Medical Examination for Employability form assessing similar limitations and indicating that plaintiff could possibly resume working by October 10, 2013. T. 506.

The ALJ's decision specifically noted that Dr. Nickell's opinion that plaintiff was unable to work was inconsistent with the doctor's own treatment records and the employability assessment, which, apart from the aforementioned functional abilities, reveals no physical limitations aside from the use of public transportation. T. 490; *see* T. 26 ("Dr. Nickell paradoxically found that [plaintiff] is unable to work, yet is able to work without or with some limitations."). In fact, through the course of her assessments, Dr. Nickell consistently opines that plaintiff has no physical limitations. The record also reveals, as noted by the ALJ, that in Dr. Nickell's third and final medical examination for employability form, dated October 10, 2013, she opined that plaintiff would be able to return to work within five months. T. 26.

The Court finds that the ALJ's decision to afford little weight to the opinions of Ms. Eyth, Ms. Klein, and Dr. Nickell is supported by the record evidence as a whole. The Court also finds

that the ALJ did not err in her determination that the consultative opinions of examining psychologist Marjory Baittle and reviewing physician T. Harding are supported by the record. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 35 (2d Cir. 2013) (finding no reversible error where ALJ assigned "substantial weight" to state agency reviewer's opinion, where it was "supported by the remainder of the record"). "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Younes v. Colvin*, 2015 WL 1524417, at *5 (N.D.N.Y. 2015) (citing SSR 96-6p).

In a psychiatric evaluation dated March 8, 2012, Dr. Baittle opined that plaintiff's attention and concentration was intact with a mild impairment in recent and remote memory skills and above average cognitive skills. Dr. Baittle assessed fair insight and judgment with psychiatric problems "that may interfere with [plaintiff's] ability to function on a daily basis." T. 250. Dr. Baittle had no recommendations apart from continuing plaintiff's current psychotherapy and opined that plaintiff's prognosis was guarded. A psychiatric review technique report completed by Dr. Harding on March 20, 2012 reveals his opinion that plaintiff had a mild functional limitation in the area of restriction of daily living activities and moderate functional

limitations in the areas maintaining social functioning and concentration, persistence or pace. There was no evidence to establish the presence of "C" criteria of the Listings.

Dr. Harding's mental residual functional capacity assessment reveals plaintiff's moderate limitations in the following areas: understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. T. 244-245. He did not assess any marked limitations in any category. Dr. Harding opined that plaintiff could "perform simple work in a low contact environment." T. 246.

The Court concludes that, based on its careful consideration of the record evidence, that the ALJ's RFC determination that plaintiff was able to perform light work with the aforementioned limitations is based on substantial evidence, including the physical limitation evidence and the objective findings of Ms. Eyth, Ms. Klein, and Dr. Nickell that although plaintiff's anxiety problems persisted in public, her condition was stabilized

by therapy and medication. It is well established that the RFC assessment must include, as it does here, "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hogan v. Astrue*, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, *7 (S.S.A. 1996) and citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Importantly, the ALJ is not required to credit all portions of a treating physician's report even if she accepts other portions of the same report. *See Pavia v. Colvin*, 2015 WL 4644537, at *4 (W.D.N.Y. 2015), citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

The Court has also considered plaintiff's contention concerning the ALJ's credibility assessment (plaintiff's memorandum of law, p. 25-27), which incorporates a review of her testimony, and finds no indication that the ALJ failed to apply the proper standard in making this assessment. *See Judelsohn v. Astrue*, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012); *Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012). Moreover, substantial evidence supports the finding that the plaintiff's subjective complaints lacked credibility because of inconsistencies with the balance of the record evidence and testimony. In her decision, the ALJ notes that plaintiff "described her own back pain as stable with infrequent flare-ups" and reported that her depression was

controlled. Plaintiff's testimony concerning her daily activities indicate that despite her anxiety, she was able cook, clean, do laundry, occasionally go out with her boyfriend, play computer games, do puzzles, read, watch television, and listen to the radio. The ALJ found that the plaintiff's subjective complaints in relation to the intensity, persistence, and limiting effects of the her symptoms are not credible because they are unsupported by the record evidence.

Under the circumstances here, the Court finds that substantial evidence supports the ALJ's credibility determination. The Court further concludes that the additional evidence submitted to the Appeals Counsel concerning plaintiff's compliance with therapy and her pelvic and abdominal pain did not warrant review of the ALJ's decision. The Appeals Council must grant review only if "it finds that the [ALJ's] action, findings, or contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.147(b). There is no indication here that this additional evidence, to the extent that these materials did not contain evidence already considered by the ALJ, would, "more likely than not," change the ALJ's findings or determination. Consequently, remand is not warranted.

**CONCLUSION**

Plaintiff's motion for judgment on the pleadings (Docket No. 11) is denied, and defendant's cross-motion for

judgment on the pleadings (Docket No. 14) is granted. Clerk is directed to close case.

ALL OF THE ABOVE IS SO ORDERED.

S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
August 27, 2016